IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVE KOZAR and SHERRY KOZAR,       )
                                    )
       Plaintiffs,                  )
                                    )
 -vs-                               )
                                    )   Civil Action No. 04-901
                                    )
SHARP ELECTRONICS CORPORATION,      )
                                    )
                                    )
       Defendant.                   )

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

This case arises out of a fire that occurred at the residence of Steve and Sherry Kozar on July 8, 2003. Plaintiffs have employed two experts to discuss their theory that the cause and origin of the fire was the Sharp window air conditioning unit model AF-08CRL manufactured by Defendant, Sharp Electronics Corporation ("SEC"): Brian L. Gray, a cause and origin investigator, and Matthew Balmer, an electrical engineer. SEC has filed a Motion to Strike and a Motion seeking to preclude the expert testimony of Gray and Balmer based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. (Docket No. 18). A hearing on the same was held on August 22, 2005. After carefully considering the submissions of the parties and the evidence presented at the hearing, said Motion

(Docket No. 18) is granted as more fully set forth below.

## ANALYSIS

### A. THE *DAUBERT* STANDARD AND RULE 702

In *Daubert*, the Supreme Court held that:

> [f]aced with a proffer of expert scientific testimony, ... the trial court judge must determine at the outset ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592-93 (1992). In the Third Circuit, the trial court's role as a "gatekeeper" announced in *Daubert* requires proof that: (1) the proffered witness is qualified as an expert; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must "fit" the facts of the case. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741-42 (3d Cir. 1994).

The second inquiry focuses upon methodology.[1] The inquiry into methodology is designed to ensure that an expert's opinions are based upon "'methods and procedures of science' rather than on subjective belief or unsupported speculation." *Id.* at 742. Reliability is assessed by determining whether: (1) the theory or technique can be tested; (2) the theory or technique has been peer

---

[1] Methodology has been defined as a "body of methods, rules and postulates employed by a discipline: a particular procedure [or] set of procedures." *Oddi v. Ford Motor Co.,* 234 F.3d 136, 156 n.20 (3d Cir. 2000).

reviewed; (3) there is a high rate of known or potential error; (4) there are standards of control; (5) the theory is "generally accepted"; (6) there is a sufficient relationship between the technique and methods which have been established to be reliable; (7) the expert's qualifications are sufficient; and (8) the method has been put to non-judicial uses. *See Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp.2d 584, 593-94 (D. N.J. 2002). "Some courts also consider additional factors relevant in determining reliability, including: (i) whether the expert's proposed testimony grows naturally and directly out of research the expert has conducted independent of the litigation ...; (ii) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion...; (iii) whether the expert has adequately accounted for alternative explanations ...; (iv) whether the expert is being as careful as he would be in his professional work outside of the litigation context...; and (v) whether the field of expertise asserted by the expert is known to reach reliable results for the type of opinion proffered by the expert ... ." *Magistrini*, 180 F. Supp.2d at 594-95 (citations omitted).

The third requirement is that the expert's testimony "fits" the facts of the case. "'Fit' requires that the proffered testimony must in fact assist the jury, by providing it with relevant information, necessary to a reasoned decision of the case." *Id., citing, Paoli*, 35 F.3d at 743.

**B. <u>NATIONAL FIRE PROTECTION ASSOCIATION ("NFPA") 921</u>**

Both Gray and Balmer testified that NFPA 921, titled "Guide for Fire and Explosion Investigations," is the authoritative industry standard that should be

followed when conducting cause and origin investigations. Chapter 4 of the NFPA 921 sets forth the basic methodology to employ when conducting a fire investigation. (Docket No. 23, Ex. J, 3). Section 4.3 provides the following steps to apply: 1) recognize the need (identify the problem); 2) define the problem; 3) collect the data; 4) analyze the data (inductive reasoning); 5) develop a hypothesis; and 6) test the hypothesis (deductive reasoning). *Id.* Specifically, §4.3.6 of NFPA 921 provides as follows:

> **Test the Hypothesis (Deductive reasoning).** The investigator does not have a truly provable hypothesis unless it can stand the test of careful and serious challenge. Testing of the hypothesis is done by the principle of deductive reasoning, in which the investigator compares his or her hypothesis to all known facts. (*See 3.3.35, Deductive Reasoning.*) This testing of the hypothesis may be either cognitive or experimental. If the hypothesis cannot withstand an examination by deductive reasoning, it should be discarded as not provable and a new hypothesis should be tested. This test may include the collection of new data or the reanalysis of existing data. This process needs to be continued until all feasible hypotheses have been tested. Otherwise the fire cause should be listed as "undetermined."

Both Gray and Balmer purportedly followed this methodology. Since Gray's opinion relies on Balmer's opinions, I address SEC's Motion with regard to Balmer first.

C. <u>MATTHEW BALMER, ELECTRICAL ENGINEER</u>

Plaintiffs' theory of the case focuses on the air conditioner as the cause and origin of the fire. Balmer is an electrical engineer and not a cause and origin expert. (Tr. 106, 117). As a result, Plaintiff's counsel agreed at the hearing that Balmer is not competent to give the opinion that the cause and origin of the fire was the air

conditioner. (Tr. 199). Consequently, Balmer is precluded from offering any cause and origin opinions.

Furthermore, with regard to the defect / malfunction of the air conditioner, Balmer could not give an opinion within a reasonable degree of engineering certainty. (Tr. 112-13, 168). Rather, he admitted that his engineering opinion was "speculative." (Tr. 160-68). The *Daubert* inquiry into methodology is designed to ensure that an expert's opinions are based upon "'methods and procedures of science' rather than on subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d at 742. Since Balmer's engineering opinions regarding the defect / malfunction of the air conditioner are based on speculation, I find that such engineering opinions must be precluded under *Daubert*.

### D. **BRIAN L. GRAY, CAUSE AND ORIGIN INVESTIGATOR**

The six step of the basic methodology to employ when conducting a fire investigation is to test the hypothesis. Gray's report states:

> Electrical engineer Mathew (sic) Balmer examined all of the evidential items identified that were retrieved from the loss site. Through his examination of the physical evidence it was determined that the fire originated in the Sharp window air conditioner, as was caused by a failure within the air conditioner.

(Docket No. 23, Ex. J, 2 p. 6).[2] In essence, Gray's report adopts the cause and origin opinion of Balmer.

SEC's first attack of Gray's opinion as to the cause and origin of the fire is that

---

[2] I note that I am not quite sure how Gray arrives at this conclusion on February 4, 2005, when Balmer's report was not issued until, at the earliest, February 28, 2005. Nevertheless, this is what his report states.

Gray relies solely on Balmer's cause and origin opinion to reach his opinion on cause and origin. At the hearing Gray testified that he did not perform any testing on the items recovered from the fire. (Tr. 83). Rather, he testified that he relied "solely and entirely" on Balmer's opinions to arrive at conclusions regarding the cause and origin of the fire. Since I am precluding Balmer's opinions, Gray's reliance on the same is fatal.

At the hearing, Plaintiffs' counsel tries to rehabilitate Gray by arguing that he conducted cognitive testing in compliance with NFPA 921 §4.3.6. (Tr. 28). While §4.3.6 allows for testing to be done either cognitively or experimentally, I am not persuaded by this argument. First, it is in conflict with Gray's testimony that he did not conduct any of the testing, but that the testing was performed by Balmer. (Tr. 83, 92-93). Second, Gray's own report states that the examination of the physical evidence was conducted by Balmer. (Docket No. 23, Ex. J, 2 p. 6). Gray's wholesale reliance on Balmer's cause and origin opinion, which has been precluded, together with his failure to conduct any testing, impugns the reliability of his opinion. Consequently, Gray's cause and origin opinion must be excluded.

Even if I did not exclude Gray's opinion based on the reasons above, I would still exclude his testimony for failure to comply with NFPA 921. First, NFPA 921 states that in determining the cause of the fire, the investigator must identify, *inter alia,* the appliance, the presence of a competent ignition source, the type and form of the material first ignited, and the failures.... " (Docket No. 23, Ex. J, 3 NFPA 921 §18.1.2). Gray never identified an ignition source in the air conditioner. (Tr. 46).

Instead, Gray relies solely on Balmer's conclusions, and Balmer, even if permitted to testify, cannot testify to a reasonable degree of engineering certainty that the ignition source was a loose connection or the insulation. (Tr. 46, 112-113).

Second, NFPA 921 states that the determination of a cause of a fire "should be based on evidence rather than on the absence of evidence; however, when the origin of a fire is clearly defined, it is occasionally possible to make a credible determination regarding the cause of the fire, even when there is no physical evidence of the ignition source available. This finding may be accomplished through the credible elimination of all other potential ignition sources...." (Docket No. 23, Ex. J, 3 NFPA 921 §18.2.1). "Elimination, which actually involves the developing, testing and rejection of alternate hypotheses, becomes more difficult as the degree of destruction in the compartment of origin increases, and it is not possible in many cases." (Docket No. 23, Ex. J, 3 NFPA 921 §18.2.3). In this case, Gray was able to eliminate many possible ignition sources, but he was not able to eliminate them all. For example, at the time Gray issued his report on February 4, 2005, the only eyewitness testimony Gray had before him was the statement he originally took of Brittany Kozar.[3] At that time, Brittany Kozar stated that the fire was at the television and at the corner of the bed. (Tr. 50). Gray did not eliminate the television as the cause of the fire.

> Q. And what I want you to tell me, sir, is, is to answer this

---

[3]Brittany Kozar's deposition was conducted on February 21, 2005, after Gray's report was issued. Brittany Kozar testified at her deposition that she saw the fire being in the area of the bed and the windows where the air conditioner was, but not at the television. (Tr. 55); *See also,* Docket No. 23, Ex. F).

7

>one question for me. Isn't it true that you cannot eliminate the television as a potential cause for this fire when the power cord was not recovered and could not be analyzed for signs of electrical activity.
>
>A. I could not definitively rule that out, no.

(Tr. 95). As a result, according to NFPA 921 §18.2, Gray may not use the process of elimination to determine the cause of the fire.

I am mindful that to survive a *Daubert* challenge, the expert opinion need not be devoid of all possible lines of attack. In reaching his conclusions, however, Gray neither applied the methodology recommended by NFPA 921, nor satisfied the requirements for expert testimony under *Daubert.* Consequently, Gray's testimony is precluded.

*******************************************

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVE KOZAR and SHERRY KOZAR,    )<br>                                                                 )<br>           Plaintiffs,                              )<br>                                                                 )<br>    -vs-                                                    )<br>                                                                 )   Civil Action No.  04-901<br>                                                                 )<br>SHARP ELECTRONICS CORPORATION, )<br>                                                                 )<br>                                                                 )<br>           Defendant.                              ) | |

AMBROSE, Chief District Judge.

## ORDER OF COURT

And Now, this **30th** day of September, 2005, after a review of the submissions of the parties, it is  ordered that Sharp Electronics Corp.'s Motion to Strike and Motion to Preclude the Testimony of Brian L. Gray and Matthew Balmer (Docket No. 18) is granted. It is further ordered that Summary Judgment Motions are due on , October 20, 2005.  Briefs in Opposition are due on, November 10, 2005.

BY THE COURT:


/S/  Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge